**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JOHN LOSCOMBE,

     Plaintiffs,

        v.

CITY OF SCRANTON, et al.

     Defendants.

CIVIL ACTION NO. 3:10-CV-1182

(JUDGE CAPUTO)

## MEMORANDUM

Presently before me are two separate motions to dismiss by two separate groups of Defendants.  (Docs. 34 and 39.)  Pursuant to a Scranton City Ordinance, Plaintiff John Loscombe's pension payments were suspended when he took a political position on the Scranton City Council.  Because of this suspension, Loscombe argues that this Ordinance has violated his First Amendment rights of freedom of association, amounts to First Amendment retaliation, has effected a Fifth Amendment taking, has bypassed the substantive and procedural protections of the Fourteenth Amendment, is a violation of Equal Protection, and is vague and overbroad.  Collectively, the Defendants have all moved to dismiss all of these allegations.

## BACKGROUND

Plaintiff John Loscombe alleges the following in his Second Amended Complaint. (Doc. 29.)  Loscombe was a Fire Captain for the City of Scranton until his retirement.  For his service, he received a retirement pension from the Scranton Fire Department "until it was stripped away from him in retaliation for him exercising his First Amendment right to hold political office and in violation of his due process rights."  (*Id.* at ¶ 2.)  Specifically, the

Defendants suspended Loscombe's pension without notice of hearing for "accepting an offer to hold the political position of Scranton City Council member on or about February 3, 2010 and continuing." (*Id.* at ¶ 15.)  This was an act of retaliation aimed at compelling Loscombe to resign as council member.

Although not explicitly clear, Loscombe's Second Amended Complaint suggests that this pension suspension was done pursuant to "Section 99-80 a/k/a Section 24 of File of Council No. 14 of 1964."  This Scranton City Ordinance provides that:

> When any fireman is pensioned and thereafter enters the service of the City in any capacity with compensation the pension of such person shall be suspended during his term of service.   Upon termination of such compensated service the pension payments shall be resumed on request of the pensioner.

Scranton, Pa., Code of the City of Scranton ch. 99, art. V, § 99-80 (1997).  Loscombe asserts that this Ordinance is unconstitutionally vague and overbroad and in violation of the First Amendment's protections of free speech and association, the Due Process Clause of the Fourteenth Amendment, and the Takings Clause of the Fifth Amendment (Count III). Loscombe further maintains that this pension suspension was done in retaliation for exercising his First Amendment right to hold political office (Count I); that the suspension was in violation of both substantive and procedural due process under the Fourteenth Amendment (Count II); and that the pension suspension amounted to an unlawful seizure and taking (Count IV).

Although no specific involvement or particularized actions are plead, Loscombe asserts all four counts against all Defendants: the City of Scranton; the City's Firemen's Pension Commission; the City's Composite Pension Board; the Firemen's Relief and Pension Fund Commission; and Mayor Chris Doherty in his official and personal capacity.

2

On March 5, 2012, the City of Scranton and Mayor Chris Doherty (the "City Defendants") filed a motion to dismiss.  (Doc. 34.)  On March 9, 2011, the City's Firemen's Pension Commission, the City's Composite Pension Board, and the Firemen's Relief and Pension Fund Commission (the "Pension Defendants") also filed a motion to dismiss.  (Doc. 39.)  These Motions are now ripe for the Court's review.

## DISCUSSION

### I. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims.  *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).  The Court does not consider whether a plaintiff will ultimately prevail.  *See id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim.  *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Detailed factual allegations are not required. *Twombly,* 550 U.S. at 555.  However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  Instead, a complaint

3

must "show" this entitlement by alleging sufficient facts. *Id.*

As such, the inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id.* The Court need not assume the plaintiff can prove facts that were

4

not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

## II.    Analysis

### A.    The Mayor and The City

The City Defendants admit that Loscombe's pension was suspended because of his acceptance of a paid position on the Scranton City Council.  (City Defs.' Br. at 10, Doc. 40.) They argue, however, that since Loscombe's pension is "under the separate care, control and supervision of the entirely distinct Fireman's Relief and Pension Fund Commission," that any adverse action taken with respect to Loscombe is not attributable to the Mayor or the City.  (*Id.*)  In fact, the Amended Complaint wholly fails to allege any particularized, personal involvement of either of these two entities.

#### 1.    The City of Scranton

Local governing bodies are deemed to be "persons" within the meaning of 42 U.S.C. § 1983 and can be sued directly under that act for monetary, declaratory, or injunctive relief. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

Loscombe's claim against the City of Scranton sounds under *Monell*, which provides that "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  *Monell*, 436 U.S. at 690 (1978); *Bright v. Westmoreland County,* 380 F.3d 729, 736 n.2 (3d Cir. 2004) (same).  While such liability

does not attach for injury "inflicted solely by its employees or agents," governmental liability may attach for the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Id.* at 694; *Langford v. City of Atlantic City*, 235 F.3d 845, 847 (3d Cir. 2000).  To establish such causation, a plaintiff must allege a "plausible nexus" or "affirmative link" between the violation and the municipality's custom or practice.  *Id.*  Causation exists where the connection between the policy and injury is so strong that it would be a plainly obvious consequence.  *Bd. of County Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 411 (1997).

Here, it is plainly obvious that the Ordinance's direct application was the source of Loscombe's alleged injury.  Therefore, the City of Scranton will not be dismissed from this matter for failure to allege a custom or practice insofar as there remain allegations that the Ordinance was unconstitutional.

### 2.    Mayor Chris Doherty

Loscombe has also included the Mayor of Scranton, Chris Doherty, in both his personal and official capacity.  As to his official capacity, the Second Amended Complaint avers that Loscombe is "required to sue him to declare a provision of an Ordinance unconstitutional."  (Second Am. Compl. at ¶ 8, Doc. 29.)  Loscombe, however, does not renew this argument in his brief in opposition, but instead argues that Mayor Doherty is liable as a policy-maker where "the City of Scranton took a deliberate official action of stripping Plaintiff's disability pension."  (Pl.'s Br. at 17, Doc. 46.)

A supervisor[1] may be liable under § 1983 for the violation of a plaintiff's civil rights where he "directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir.2004). A supervisor may also be liable under § 1983 "if he or she implements a policy or practice that creates an unreasonable risk of a constitutional violation on the part of the subordinate and the supervisor's failure to change the policy or employ corrective practices is a cause of this unconstitutional conduct." *Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 72 (3d Cir.2011) (citing *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir.2001)). Of course, a supervisor cannot be held liable solely on a theory of *respondeat superior*. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Loscombe represents that he is predicating Mayor Doherty's liability on his policymaking position. (Pl.'s Br. at 16, Doc. 46.) This approach requires considering: (1) "whether, as a matter of state law, the official is responsible for making policy in the particular area of municipal business in question"; and (2) "whether the official's authority to make policy in that area is final and unreviewable." *Hill v. Borough of Kutztown*, 455 F.3d 225, 245 (3d Cir. 2006) (citations omitted). The Second Amended Complaint fails to allege either element as it contains no allegation that the Mayor was responsible for making policy in regards to the Ordinance at issue, or that any such authority would be final or unreviewable. The claim against Mayor Doherty in his official capacity therefore fails.

---

[1] Based on the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Third Circuit has "expressed uncertainty as to the viability and scope of supervisory liability." *Argueta v. U.S. Immigration & Customs Enforcement*, 643 F.3d 60, 70 (3d Cir.2011) (internal citations omitted). For the purposes of this opinion, however, the continued validity of imposing liability on a supervisor will be assumed.

Further, to the extent Mayor Doherty is named in his personal capacity, this claim must also fail.  Under § 1983, a defendant "must have personal involvement in the alleged wrongs to be liable," *Sutton v. Rasheed*, 323 F.3d 236, 249 (3d Cir.2003), and "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved," *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 201 (3d Cir.2000).  No such personal involvement is pleaded in the instant action.

Instead, Loscombe attempts in his brief to reverse-engineer this personal involvement on the supposition that Mayor Doherty is "the enforcer of the ordinances of the City."  (Second Am. Compl. at ¶ 8, Doc. 29; citing Scranton, Pa., Code of the City of Scranton ch. 99, art. III, § 6-5 (1997).)  While it is true that the Code requires the Mayor to "enforce the Charter and ordinances of the City and all general laws applicable thereto," that does not suggest that the Mayor actually had any involvement in the case at bar.

Therefore, the Mayor will be dismissed in both his personal and official capacity.  However, because there is no indication that more particularized pleadings would be futile, Loscombe will be granted leave to amend to assert claims against Mayor Doherty.

## B.    First Amendment Retaliation Claim (Count I)

In his Second Amended Complaint, Plaintiff Loscombe alleges that his pension was suspended "as a retaliatory move to financially cripple [him] into resigning from political office."  (Second Am. Compl. at ¶ 18, Doc. 29.)  To plead a First Amendment retaliation claim, a plaintiff must allege: "(1) he engaged in constitutionally protected conduct, (2) he was subjected to adverse actions by a state actor, and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action." *Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011) (citation omitted).

Loscombe provides no particularized allegations in support of his conclusion that the application of this Ordinance was retaliatory, and I find it lacking in plausibility as plead.  In other words, there are no factual assertions in the Complaint that would "allow[] the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Of course, "without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (citing *Twombly*, 550 U.S. at 555 n. 3).  Even assuming that Loscombe has properly pleaded constitutionally-protected conduct and adverse actions by a state actor, the Second Amended Complaint is most notably infirm in its failure to evince that the protected activity was a substantial motivating factor: that the Defendants would not have suspended Loscombe's pension had he engaged in city employment that did was not constitutionally protected.  As such, this retaliation claim will be dismissed from this action, but leave to amend will be granted.

### C.   Violation of Substantive and Procedural Due Process (Count II)

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property without due process of the law."  U.S. Const. amend. XIV.  As the Due Process Clause is comprised of both substantive and procedural components, *Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 658 (3d Cir. 2011), each will be addressed in turn.

### 1.   Substantive Due Process

As the Third Circuit has recognized, the Substantive Due Process component of the

Fourteenth Amendment is comprised of "two very different threads." *Nicholas v. Pennsylvania State Univ.*, 227 F.3d 133, 139 (3d Cir. 2000). The first concerns the validity of a legislative act itself. The second, concerned with non-legislative state action, protects against the deprivation of a property interest that is "arbitrary, irrational, or tainted by improper motive." *Id.* (quoting *Woodwind Estates, Ltd. v. Gretkowski*, 205 F.3d 118, 123 (3d Cir. 2000)). Since this is a protection against irrational conduct by the government, "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Chainey v. Street*, 523 F.3d 200, 219 (3d Cir. 2008) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). Specifically, to establish a substantive due process violation, a plaintiff must prove: (1) the deprivation of an interest protected by the substantive due process clause; and (2) that the government's deprivation of that protected interest shocks the conscience. *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 190 (3d Cir.2009) (citing *Chainey*, 523 F.3d at 219).

I have previously determined that a pension benefit is not a fundamental right entitled to substantive due process protection. *See Kegolis v. Borough of Shenandoah*, No. 03–0602, 2006 WL 3814311, at *3 (M.D. Pa. Dec. 27, 2006). There, I specifically held "that a pension benefit, whether vested or unvested, does not constitute property entitled to substantive due process protection in the Third Circuit." *Id.*; *see also Walker v. City of Waterbury*, 601 F. Supp. 2d 420, 425 (D. Conn. 2009) ("Plaintiffs do not have a fundamental right to their vested pension benefits that is protected by the substantive component of the due process clause of the Constitution"); *McGovern v. City of Jersey City*, No. 98–5186, 2006 WL 42236, at *13 (D.N.J. Jan.6, 2006) (finding that pension benefits were not afforded substantive due process protection).

10

However, even assuming that Loscombe had a sufficient property interest in his pension as to trigger substantive due process protections, there is also no alleged conduct by any Defendant that shocks the conscience.  While the standard for conscience shocking is subjective and contextual, "it is governmental conduct intended to injure that is most likely to rise to the conscience-shocking level."  *Evans v. Sec'y of Pa. Dep't of Corr.*, 645 F.3d 650, 660 (3d Cir.2011) (internal quotations omitted) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998)).  Such behavior can be found through "allegations of corruption, self-dealing, [or] bias against an ethnic group."  *Chainey*, 523 F.3d at 220 (3d Cir.2008).  Here, while there are no such allegations, I especially find it not patently shocking that a city would suspend a worker's pension while they are receiving another stream of income from that city.  Finally, as the alleged conduct in this case was in direct conformity with the Ordinance,[2] these actions were not at all arbitrary.  Therefore, Loscombe's substantive due process claim fails and will be dismissed with prejudice.

### 2.    Procedural Due Process

A violation of procedural due process requires a deprivation of a "protected property interest" and "that the state procedure for challenging the deprivation does not satisfy the requirements of procedural due process."  *DeBlasio v. Zoning Bd. of Adjustment for Twp. of W. Amwell*, 53 F.3d 592, 597 (3d Cir. 1995) *abrogated on other ground by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA*, 316 F.3d 392 (3d Cir. 2003).  In appraising the procedures used, a court will consider: "(1) the private interest affected by the official action; (2) the risk that the plaintiff will suffer an erroneous deprivation through the

---

[2]To the extent that Loscombe argues that the Ordinance does not apply to him, I reject this argument. *See* Section II(C)(2), *infra*.

procedure used and the probable value if any of additional procedural safeguards; and (3) the government's interest." *Reichley v. Pennsylvania Dept. of Agric.*, 427 F.3d 236, 246 (3d Cir. 2005) (citation omitted).

In regard to procedural due process, property "is merely a label applied to a benefit when an individual possesses a 'legitimate entitlement' to it under 'existing rules or understandings.'" *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 316 (M.D. Pa. 2004) (quoting *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)).  These notions are derived "from sources independent of the Constitution, usually state statutes and common law."  *Id.*  And, there are cases from the Pennsylvania courts which have found that retirement benefits cannot be terminated without some additional procedures.  *See e.g. Olsen v. State Emps.' Ret. Bd.*, 688 A.2d 255, 257 (Pa. Cmwlth. Ct. 1997) (opining that the State Employees' Retirement Board "must understand that the retirement benefits it administers are property rights"); *Cherillo v. Ret. Bd. of Allegheny Cnty.*, 796 A.2d 420, 421 (Pa. Cmwlth. Ct. 2002) (determining that a retiree was entitled to due process prior to the termination of his disability retirement benefits).   However, more analogous to the instant case is my denial of a procedural due process claim in *Brace v. County of Luzerne*, --- F. Supp. 2d ---, 2012 WL 2121173 (M.D. Pa. June 12, 2012).  As the plaintiff in *Brace* had been convicted of a federal crime, the relevant Retirement Board was without discretion in discontinuing his pension benefits since the operative statute required that "benefits shall be forfeited upon entry of a plea of guilty."  *Id.* at *12.  Noting that this forfeiture was automatic, I found that there was "simply no factual dispute that a pre-deprivation notice or hearing could have addressed," *Id.* (quoting *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir.2000)), and that additional procedural safeguards were therefore unwarranted.

The instant case dictates the same result.  While the Second Amended Complaint asserts that Loscombe was denied procedural due process because he was not afforded notice or opportunity to be heard before his pension was suspended, I do not find that such process was required.  Specifically, as in *Brace*, additional procedural safeguards would not have precluded an erroneous deprivation as the matter *sub judice* required only the same simple, straightforward application of a statute.

In particular, the Ordinance at issue provides that "[w]hen any fireman is pensioned and thereafter enters the service of the City in any capacity with compensation the pension of such person shall be suspended during his term of service."  Scranton, Pa., Code of the City of Scranton ch. 99, art. V, § 99-80 (1997).  The Second Amended Complaint avers that "John Loscombe was a Fire Captain for the City of Scranton Fire Department and receiving his retirement fire pension."  (Second Am. Compl. at ¶ 2, Doc. 29.)  Thus, the first qualification of the Ordinance is satisfied.[3]  The Complaint also explains that Loscombe had "accept[ed] an offer to hold the political position of Scranton City Council member" (*Id.* at ¶ 15), therefore falling within the second qualification of "enter[ing] the service of the City in any capacity."   Finally, although not clear from the face of the Second Amended Complaint, Loscombe's brief explains that the position on City Council resulted in compensation. (Pl.'s Br. at 11, Doc. 46.)  Thus, while the Ordinance itself may be excessively broad or otherwise infirm, additional factfinding was not needed to determine that Loscombe fell within its purview.

Loscombe raises two unconvincing arguments in response to the above analysis.

---

[3]As the Plaintiff points out, for the purposes of this Ordinance a "fireman . . . includes the Fire Chief, any officer or engineer, and any regularly appointed fireman who has satisfactorily passed the probationary period."   Scranton, Pa., Code of the City of Scranton ch. 99, art. V, § 99-59(B) (1997).

First, he appears to suggest that in order to be subject to the Ordinance, one must *return* to service as firefighter.  The plain meaning of the Ordinance, however, is an individual *pensioned* as a firefighter is subject to pension suspension for "entering the service of the City in *any capacity*."  Secondly, Loscombe argues that "an elected or appointed leader is not an 'employee' of the City of Scranton."  (Pl.'s Br. at 10, Doc. 46.)  This suggestion is unhelpful as the Ordinance says nothing about "employees" and extends broadly to anyone in "the service of the city."

Therefore, Loscombe's procedural due process claim will also be dismissed with prejudice.

### D.      The Ordinance is Unconstitutional on its Face and As Applied (Count III)

Count III alleges that the Ordinance is unconstitutional on its face and as applied under the First, Fifth, and Fourteenth Amendments.  Each constitutional amendment will be considered separately below.

#### 1.      First Amendment Issues

Loscombe argues that the Ordinance works an impermissible restriction on his political speech by having the power to coerce his non-participation on the City Council.  In pertinent part, the First Amendment Protects against laws "abridging the freedom of speech . . . or the right of the people peaceably to assemble."  U.S. Const. amend. I.  These freedoms of speech and association have been applied to state actors through the Fourteenth Amendment.

#### a.      Free Speech

Although the Second Amended Complaint pleads a claim for violation of free speech both as applied and on the face of the Ordinance, there are no allegations contained therein

suggesting that the Ordinance at all hindered Loscombe's free speech or in any way had the potential to.  As there is no suggestion in any of the filings before the Court that this was the case, this free speech claim will be dismissed with prejudice both on the face and as applied.

### b.    Freedom of Association

Loscombe's Second Amended Complaint avers that "[e]very retired public safety officer . . . has a constitutional right to hold a political office."  (Second Am. Compl. at ¶ 1, Doc. 29.)  And, no party contests that Loscombe and other retired firefighters have a right to associate with and as members of the City Council.  Such expressive association, "recognize[s] a right to associate for the purpose of engaging in those activities protected by the First Amendment–speech, assembly, petition for the redress of grievances, and the exercise of religion."  *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984).  As such, "[a] social group is not protected unless it engages in expressive activity such as taking a stance on an issue of public, political, social, or cultural importance."  *Schultz v. Wilson*, 304 F. App'x 116, 120 (3d Cir. 2008) (citing *Pi Lambda Phi Fraternity, Inc. v. Univ. of Pittsburgh*, 229 F.3d 435, 444 (3d Cir. 2000)).

"As in the area of freedom of expression, an individual's right of association may be limited by valid, content-neutral time, place and manner restrictions enacted by the state." *Tacynec v. City of Phila.*, 687 F.2d 793, 799 (3d Cir. 1982) (citation omitted); *Grace United Methodist Church v. City Of Cheyenne*, 451 F.3d 643, 658 (10th Cir. 2006) (applying same standard for content-neutral speech to association); *Emergency Coal. To Defend Educ. Travel v. U.S. Dept. of Treasury*, 498 F. Supp. 2d 150, 161 (D.D.C. 2007) *aff'd* 545 F.3d 4 (D.C. Cir. 2008) (same).  Therefore, in analogizing to the speech domain, the first step in

15

assessing this claim is to determine whether the Ordinance is content-neutral or content-based in order to ascertain the necessary amount of scrutiny to apply to it. *Johnson v. City & Cnty. of Phila.*, 665 F.3d 486, 491 (3d Cir. 2011). Statutes are content-neutral "where they were intended to serve purposes unrelated to the content of the regulated speech, despite their incidental effects on some speakers but not others." *Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd.*, 502 U.S. 105, 122 (1991). In other words, "[w]hen determining whether a statute is content neutral, a principal consideration is 'whether the government has adopted a regulation of speech because of disagreement with the message it conveys,' or instead, adopted that regulation for some other purpose collateral to the protected speech." *Free Speech Coal., Inc. v. Attorney Gen. of U.S.*, 677 F.3d 519, 533 (3d Cir. 2012) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). Here, there is no suggestion in the Ordinance itself or in the Second Amended Complaint that this law was in any way crafted with an eye towards suppressing speech or association, but rather that its infringement of the First Amendment is incidental to its application. Therefore, the Ordinance at issue is a content-neutral one.

As a content-neutral Ordinance, § 99-80 does "not offend the First Amendment as long as the restrictions (1) 'are narrowly tailored to serve a significant governmental interest'; and (2) 'leave open ample alternative channels for communication of the information.'" *Johnson*, 665 F.3d at 491 (quoting *Rappa v. New Castle Cnty.*, 18 F.3d 1043, 1054 (3d Cir. 1994)). Applied to the right of association, this requires that the City's Ordinance "do[es] not burden any more speech or associational rights than necessary" in furthering the City's substantial interest. *Grace United*, 451 F.3d at 658.

At this stage, there is no evidence before the Court as to the state interest underlying

the Ordinance and whether it is sufficiently tailored to address that interest.  However, to the extent the Pension Board Defendants' represent that the aim of the Ordinance is to prevent retired employees from "double dipping" by receiving two simultaneous income streams from the city, this rationale does not appear to be narrowly tailored. (Pension Defs.' Br. at 4-5, Doc. 43.)  Specifically, as Loscombe avers that he is currently receiving less than he would be had he decided not to serve on the City Council (Pl.'s Br. at 11, Doc. 46), this would exceed the City's interest in preventing double dipping.  And, such a "prohibition on compensation unquestionably imposes a significant burden on expressive activity." *United States v. Nat'l Treasury Employees Union*, 513 U.S. 454, 468 (1995).  As such, Plaintiff's First Amendment claim freedom of association claim will be allowed to go forward.[4]

### 2.   Fifth Amendment Rights

#### a.   Vagueness[5]

"A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." *F.C.C. v. Fox Television Stations, Inc.*, 132 S. Ct. 2307, 2317 (2012).  Such vagueness is found where "men of common intelligence must necessarily guess at its meaning and differ as to its

---

[4]The Defendants do not argue as to the breadth of the statute and the Plaintiff's claim that it is overbroad will therefore also be allowed to proceed.  Under the First Amendment:

A regulation of speech may be struck down on its face if its prohibitions are sufficiently overbroad-that is, if it reaches too much expression that is protected by the Constitution. [A] policy can be found unconstitutionally overbroad if "there is a 'likelihood that the statute's very existence will inhibit free expression'" to a substantial extent.

*McCauley v. Univ. of the Virgin Islands*, 618 F.3d 232, 241 (3d Cir. 2010) (quoting *Sypniewski v. Warren Hills Reg'l Bd. of Educ.*, 307 F.3d 243, 258 (3d Cir. 2002)).

[5]"Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause of the Fifth Amendment."  *United States v. Williams*, 553 U.S. 285, 304 (2008).

application." *Id.* (quoting *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391 (1926)).  Thus, the "doctrine addresses at least two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way." *Id.*  Though this doctrine grew up within the criminal context, the vagueness principle has been extended to the civil litigation context.  *San Filippo v. Bongiovanni*, 961 F.2d 1125, 1135 (3d Cir. 1992) (citations omitted).  However, the civil context requires less specificity because the consequences are not as severe.  *Id.*

While a plaintiff whose conduct is clearly proscribed generally may not argue vagueness, in the First Amendment context, a plaintiff may "argue that a statute is overbroad because it is unclear whether it regulates a substantial amount of protected speech." *Williams*, 553 U.S. at 304 (citations omitted).  However, as noted above, there has been no plausible assertion that this Ordinance regulates any speech.  Moreover, as applied to the facts of this case, it is clear that Loscombe's conduct as a pensioned fire officer receiving compensation as a city council falls within the Ordinance's purview as "enter[ing] the service of the City in any capacity with compensation."

Even if this were not the case, a facial challenge to vagueness will only be upheld where "the enactment is impermissibly vague in all of its applications." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982).  In the public employment context, "broad public employee dismissal standards" have passed muster since "standards are not void for vagueness as long as ordinary persons using ordinary common sense would be notified that certain conduct will put them at risk of discharge." *San Filippo*, 961 F.2d at 1136 (citing *Arnett v. Kennedy*, 416 U.S. 134, 159 (1974)).  For

18

example, discharge of a teacher was permissible under a regulation allowing such "only for "conduct unbecoming a teacher . . . or other good cause.'" *Id.* at 1137 (citing to *Wishart v. McDonald*, 500 F.2d 1110, 1111 (1st Cir. 1974)).  As such, *San Filippo* found that a university regulation permitting dismissal for lacking "standards of sound scholarship and competent teaching" was not unconstitutionally vague.  *Id.*  The Third Circuit rejected the district court's narrow construction of the provision and upheld it as a broad "standard which encompasses a wide range of conduct."  *Id.*

In the instant case, the Ordinance is no so vague as to confound a man of ordinary intelligence.  In stating that a pensioned fireman's pension shall be suspended during the term of service "of the City in any capacity with compensation," the meaning is very clear: effort on behalf of the city where compensation is garnered will result in the loss of a fireman's pension.  Loscombe merely argues that this phrase provides no definition, but such is not necessary when the terms are so plain.  *See Forum for Academic & Institutional Rights, Inc. v. Rumsfeld*, 291 F. Supp. 2d 269, 318 (D.N.J. 2003) *aff'd* 446 F.3d 1317 (3d Cir. 2006) ("the mere absence of definitions does not necessarily render the statute vague, particularly where, as here, the terms are subject to interpretation according to their commonly understood meaning.").  Thus, like *San Filippo*, this is a broad regulation that reaches a large swath of compensable conduct.  This expansive reach, however, does not render it without guidance and persons of ordinary common sense would be notified that money received from any public service in Scranton would put their firemen's pension in jeopardy.  Moreover, such an encompassing definition is inherently resistant to arbitrary enforcement.

Therefore, the Ordinance is not void for vagueness and this claim will be dismissed with prejudice.

### b.        Fifth Amendment Taking

The Fifth Amendment prohibits the taking of private property for public use without just compensation.  U.S. Const. amend. V.  No Defendant has argued that this claim cannot succeed and this claim will therefore be allowed to proceed.

### 3.        Due Process Rights

In Count III, Loscombe appears to renew the Due Process claims he raised in Count II.  However, as noted, Loscombe's particular as-applied claims of substantive and procedural due process will be dismissed.  Therefore, because Loscombe makes no representations as to how the statute is facially devoid of due process, these due process claims will also be dismissed from Count III with prejudice.

### 4.        Equal Protection

Defendants also fail to respond to any of Plaintiff's equal protection claims. Therefore, Plaintiff's equal protection claim will survive these motions to dismiss.

### E.        Pension Suspension was an Unlawful Seizure and Taking (Count IV)

Count IV of the Second Amended Complaint is for "an unlawful seizure and taking." To any extent this is a claim for an unlawful taking under the Fifth Amendment, such a claim has been pleaded and addressed above in Count III.  To the extent this Count pleads something more, it fails to specify any particular legal foundation or to offer any specified allegations to support such a claim, constitutional or otherwise.  As such, this Count will be stricken from the Second Amended Complaint, although leave to amend will be granted.

**F.      Motion to Strike**

The City Defendants have moved to strike paragraph twelve of the Second Amended Complaint insofar as it "pertains to impertinent matters and characterizations regarding the Plaintiff's retirement that are irrelevant to this matter."  (City Defs.' Br. at 39, Doc. 40.)

"The court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F. Supp. 2d 393, 402 (E.D.Pa.2002). Because a motion to strike is not favored, a court will generally not grant such a motion unless the material to be stricken bears no possible relationship to the controversy and may cause prejudice to one of the parties.  *See Hanover Ins. Co. v. Ryan*, 619 F. Supp. 2d 127, 133 (E.D. Pa. 2007).  While a trial court has considerable discretion in whether to grant or deny such a motion, they are "highly disfavored" and should only be granted "when 'the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'"  *Medevac MidAtlantic, LLC v. Keystone Mercy Health Plan*, 817 F. Supp. 2d 515, 520 (E.D. Pa. 2011) (quoting *N. Penn Transfer, Inc. v. Victaulic Co. of Am.*, 859 F. Supp. 154, 158 (E.D. Pa. 1994)).

Without much elaboration, the City Defendants seek to strike the Second Amended Complaint's explanation that Loscombe was "a former Fire Captain who the City of Scranton forced into retirement based on injuries stemming from a work-related incident when the truck ladder bucket he was in hit a 12,000 volt power line, which melted the truck's tires." (Am. Compl. at ¶ 12, Doc. 29.)  While the details behind the vesting of Plaintiff's pension do appear to be irrelevant to the instant action, I do not see such a great potential for

21

prejudice that would warrant excising these allegations.  Of course, the admissibility of such evidence at trial is a wholly different matter.  Today, however, the potential for prejudice or confusion is not sufficiently high as to warrant the striking of this allegation.  Therefore, the motion to strike will be denied.

## CONCLUSION

Plaintiff John Loscombe's claims against Mayor Doherty will be dismissed for failing to plead particularized allegations, but Plaintiff will be given leave to amend for an opportunity to revise these pleadings as against the Mayor.  Plaintiffs claims for substantive and procedural due process are dismissed with prejudice, as are his claims for free speech under the First Amendment and vagueness under the Fifth Amendment.  Plaintiff's First Amendment retaliation claim is also dismissed, but leave to amend will be granted as to that claim.  Finally, Count IV will be stricken from the Second Amended Complaint for failing to state a proper claim, but leave to amend will be granted so that the Plaintiff may clarify and properly plead this claim for "unlawful seizure and taking."

As such, the Second Amended Complaint will be allowed to proceed solely on its First Amendment claims for freedom of association and overbreadth, the Fifth Amendment takings claim, and the Fourteenth Amendment Equal Protection claim.

There are three (3) pending motions for summary judgment in this matter.  Should Plaintiff elect submit a Third Amended Complaint, these three motions will be deemed moot and may be later re-filed in light of the amended pleadings.  If Plaintiff does not amend the Second Amended Complaint, these three motions will be ruled on as filed and in light of this Memorandum and Order.

An appropriate Order follows.


 August 10, 2012                         /s/ A. Richard Caputo
Date                                A. Richard Caputo
                                    United States District Judge