**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

JOHN LOSCOMBE,

      Plaintiffs,

         v.

CITY OF SCRANTON, *et al.*

      Defendants.

CIVIL ACTION NO. 3:10-CV-1182

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court are: a Motion to Dismiss filed by Defendants City of Scranton ("the City") and Mayor Chris Doherty (collectively, "the City Defendants") (Doc. 99); a Motion to Dismiss filed by Defendants City of Scranton Firemen's Pension Commission, Firemen's Relief and Pension Fund Commission, and City of Scranton Composite Pension Board (collectively, "the Pension Board Defendants") (Doc. 102); and a Motion for Partial Summary Judgment filed by Plaintiff John Loscombe (Doc. 105). Pursuant to a City Ordinance, Loscombe's pension payments were suspended when he took a paid position on the City Council after retiring from the City's Fire Department. Because of this suspension, he claims that this Ordinance has violated his First Amendment right of freedom of association, amounts to First Amendment retaliation, has effected a Fifth Amendment taking, is a violation of Equal Protection, and is overbroad. For the reasons below, the Defendants' Motions to Dismiss will be granted in part and denied in part and Loscombe's Motion for Partial Summary Judgment will be denied.

## BACKGROUND

Loscombe alleges the following in his Third Amended Complaint. (Doc. 97.) Loscombe was a Fire Captain for the City until his retirement. (*Id.* at ¶ 2.) The City forced

him into disability retirement based on injuries he sustained in a work-related accident.  (*Id.* at ¶ 13.)  For his service, he received a disability retirement pension from the City's Fire Department "until it was stripped away from him in retaliation for him exercising his First Amendment right to hold political office."  (*Id.* at ¶ 2.)  Specifically, the City Defendants directed the Pension Board Defendants to suspend Loscombe's pension soon after he joined the City Council based on a letter authored by a City business administrator requesting them to do so.  (*Id.* at ¶¶ 21, 23.)  Mayor Doherty was "intimately involved" in this decision, as he approved it based on the letter.  (*Id.* at ¶ 24.)  Both the City Defendants and the Pension Board Defendants suspended Loscombe's pension for "accepting an offer to hold the political position of Scranton City Council member on or about February 3, 2010 and continuing."  (Doc. 97 at ¶ 17.)  This was an act of retaliation aimed at financially crippling Loscombe and compelling him to resign his position on City Council,[1] (*Id.* at ¶¶ 19–20), and the City Defendants acted in conspiracy with the Pension Board Defendants to violate his constitutional rights (*Id.* at ¶ 24).

Although not explicitly clear, Loscombe's Third Amended Complaint suggests that this pension suspension was done pursuant to "Section 99-80 a/k/a Section 24 of File of Council No. 14 of 1964."  This City Ordinance ("Ordinance") provides that:

> When any fireman[2] is pensioned and thereafter enters the service of the City in any capacity with compensation the pension of such person shall be suspended during his term of service.  Upon termination of such

---

[1]     Loscombe received $21,000 per year in pension benefits and currently receives $12,500 per year from the City for serving on City Council.  (Doc. 106 at ¶¶ 3–4.)

[2]     A "fireman . . . includes the Fire Chief, any officer or engineer, and any regularly appointed fireman who has satisfactorily passed the probationary period."  Scranton, Pa., Code of the City of Scranton ch. 99, art. V, § 99-59(B) (1997).

2

> compensated service the pension payments shall be resumed on request of the pensioner.

Scranton, Pa., Code of the City of Scranton ch. 99, art. V, § 99-80 (1997). Loscombe claims that this Ordinance is unconstitutionally overbroad and violates the Fifth Amendment's Takings Clause and the First Amendment's right of freedom of association. (Doc. 97 at ¶¶ 32–33.) He further asserts that the pension suspension was done in retaliation for exercising his First Amendment right to hold political office (*Id.* at ¶ 20) and amounted to an unlawful seizure and taking (*Id.* at ¶ 35).

Loscombe filed his Third Amended Complaint[3] in this § 1983 action on August 29, 2012. (Doc. 97.) On September 14, 2012, the City Defendants filed a Motion to Dismiss (Doc. 99), and the Pension Board Defendants did likewise on September 17, 2012 (Doc. 102).[4] Loscombe moved for partial summary judgment on September 19, 2012. (Doc. 105.) The motions have been fully briefed and are ripe for disposition.

---

[3] On August 10, 2012, the Court issued a Memorandum and Order (Doc. 95) addressing motions to dismiss Loscombe's Second Amended Complaint (Doc. 29) filed by the City Defendants (Doc. 34) and the Pension Board Defendants (Doc. 39). The Court dismissed all claims against Defendant Doherty as well as Loscombe's First Amendment retaliation claim (Count I) and unlawful seizure and taking claim (Count IV) without prejudice, but granted Loscombe leave to amend those claims. It also dismissed Loscombe's substantive and procedural due process claims (Count II), First Amendment free speech (Count III), and Fifth Amendment vagueness claims (Count III) with prejudice. His First Amendment claims for freedom of association and overbreadth, Fifth Amendment takings claim, and Fourteenth Amendment Equal Protection claims were allowed to proceed. (Doc. 95 at 22.)

[4] Although the City Defendants and Pension Board Defendants raise arguments in support of their present motions that were not raised in their prior motions to dismiss, the Court will not address arguments that were previously available but were not raised. *See Rittenhouse Entm't, Inc. v. City of Wilkes–Barre*, No. 11–CV–617, 2012 WL 3562030, at *6 n.2 (M.D. Pa. Aug. 16, 2012); *see also* Fed. R. Civ. P. 12(g)(2) ("[A] party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available . . . but omitted from its earlier motion.").

## <u>LEGAL STANDARDS</u>

### I. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims. *See Semerenko v. Cendant Corp.,* 223 F.3d 165, 173 (3d Cir. 2000). The Court does not consider whether a plaintiff will ultimately prevail. *See id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim. *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The statement required by Rule 8(a)(2) must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly,* 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). As such, "[t]he touchstone of the pleading standard is plausability." *Bistrian v. Levi,* 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts: (1)

4

identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George,* 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly,* 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly,* 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal,* 556 U.S. at 677. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id.* The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.,* 147 F.3d 256, 263 & n. 13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions.'" *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

5

## II. Motion for Summary Judgment

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning,* 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police,* 71 F.3d 480, 482 (3d Cir. 1995)). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. *See Edelman v. Comm'r of Soc. Sec.,* 83 F.3d 68, 70 (3d Cir. 1996). However, where there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson,* 477 U.S. at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.* Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact and (2) the moving party is entitled to judgment as a matter of law. *See* 2D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the non-moving party has the burden of proof, simply point out to the court that "the non-moving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter,* 476 F.3d 180, 184 (3d Cir. 2007).  Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson,* 477 U.S. at 256–57.  The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990).

"To prevail on a motion for summary judgment, the non-moving party must show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial." *Galli v. N.J. Meadowlands Comm'n,* 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)).  "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Id.* (quoting *Hugh v. Butler Cnty. Family YMCA,* 418 F.3d 265, 267 (3d Cir. 2005)).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson,* 477 U.S. at 249.

## ANALYSIS

### I.  The City Defendants' (Doc. 99) and Pension Board Defendants' (Doc. 102) Motions to Dismiss[5]

The City Defendants admit that Loscombe's pension was suspended because he accepted a paid position on the Scranton City Council.  (Doc. 40 at 10.)  They argue, however, that because the pension is "under the separate care, control and supervision of the entirely distinct Fireman's Relief and Pension Fund Commission," any adverse action taken with respect to Loscombe is not attributable to Mayor Doherty or the City. (*Id.*)  The Pension Board Defendants, however, contend that they have no role in making the decision to either grant or suspend a pension or enacting the Ordinance.  (Doc. 109 at 5.)  They argue that their role is only to manage the aggregated assets of the Police Pension Fund, Fire Pension Fund, and Non-Uniform Pension Fund in accordance with Pennsylvania law and City ordinances.  (*Id.* at 6.)

#### A.  First Amendment Retaliation Claim (Count I)

In its August 10, 2012 Memorandum and Order, the Court dismissed Loscombe's First Amendment retaliation claim in his Second Amended Complaint, but granted him leave to amend.  (Doc. 95 at 9.)  In his Third Amended Complaint, Loscombe again alleges that his pension was suspended "as a retaliatory move to financially cripple [him] into resigning from political office." (Doc. 97 at ¶ 20.)  To plead a First Amendment

---

[5] The City Defendants and Pension Board Defendants move to dismiss Loscombe's First Amendment freedom of association claim, and the City Defendants contend that Loscombe has not alleged a custom or practice on the part of the City.  As the Court has previously addressed and rejected these arguments in its August 10, 2012 Memorandum and Order (Doc. 95), it will not entertain them again due to the law of the case doctrine. *See Pub. Interest Research Grp. of N.J. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d. Cir. 1997) ("The law of the case doctrine directs courts from re-deciding issues that were resolved earlier in litigation.").

retaliation claim, he must allege that: "(1) he engaged in constitutionally protected conduct, (2) he was subjected to adverse actions by a state actor, and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action." *Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011) (internal citations omitted).

Loscombe alleges that he engaged in constitutionally protected activity by running for and winning elected office on the Scranton City Council. (Doc. 97 at ¶ 16.) He also states that the City Defendants directed the Pension Board Defendants to suspend his pension after obtaining a letter from a City business administrator requesting them to do so. (*Id.* at ¶¶ 20–21, 24–26.) In addition, he alleges that his pension was suspended soon after he joined the City Council and because he accepted the position. (*Id.* at ¶¶ 17, 23.) However, the Third Amended Complaint, like Loscombe's previous complaints, does not evince that the protected activity was a substantial motivating factor—*i.e.*, that Defendants would not have suspended Loscombe's pension had he engaged in City employment that was not constitutionally protected. As such, Loscombe's First Amendment retaliation claim against the City Defendants and the Pension Board Defendants will be dismissed. In light of Loscombe's repeated failure to cure this deficiency by amendments previously allowed by the Court, he will not be given leave to amend this claim. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

## B. Seizure and Taking Claim (Count IV)

In its August 10, 2012 Memorandum and Order, the Court dismissed Loscombe's "unlawful seizure and taking" claim in his Second Amended Complaint but granted him leave to amend. (Doc. 95 at 20.) The Court stated that to the extent that the "unlawful

seizure and taking" claim is one "for an unlawful taking under the Fifth Amendment, such a claim has been pleaded . . . in Count III.  To the extent [Count IV] pleads something more, it fails to specify any particular legal foundation or to offer any specified allegations to support such a claim, constitutional or otherwise."  (*Id.*)

Loscombe raises a "unlawful seizure and taking" claim once more in Count IV of his Third Amended Complaint.  (Doc. 97 at 10–11.)  Its allegations are nearly identical to those in Count IV of the Second Amended Complaint, save for a new paragraph averring that "Defendants have used [Loscombe's] disability monies for their own purposes since he has not received his disability pensions, which Defendants have claimed is a lawful use of the monies."  (*Id.* at ¶ 36.)  To the extent that Count IV of the Third Amended Complaint pleads something more than an unlawful taking under the Fifth Amendment, which is pleaded in Count III, it has again failed to specify any particular legal foundation or offer any specified allegations to support such a claim.  Accordingly, Loscombe's "unlawful seizure and taking" claim against the City Defendants and the Pension Board Defendants will be dismissed.  Given his repeated failure to cure this deficiency by amendments previously allowed by the Court, Loscombe will not be given leave to amend this claim.  *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

### C.  Mayor Doherty

#### 1.  Personal Capacity and Official Capacity

In suits against municipal employees who act in a supervisory capacity, the Supreme Court has differentiated between claims against those individuals in their personal or individual capacities and their official capacities.  *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).  Personal capacity suits seek to impose liability on

government officials for acts performed under color of law. *Id.* Official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Id.* (quoting *Monell v. Dep't of Soc. Serv. of the City of New York*, 436 U.S. 658, 690 n.55 (1978)). Here, Loscombe is suing Mayor Doherty in both his personal and official capacities.

An official sued under § 1983 in a personal capacity action can be held liable if he acted under color of law to deprive a person of a federal right. *See Hafer v. Melo*, 502 U.S. 21, 27 (1991); *Graham*, 473 U.S. at 166. The Third Circuit has expressly applied the standards for municipal liability for § 1983 violations to cases alleging individual liability. *See Brown v. Muhlenberg Twp.,* 269 F.3d 205, 215 (3d Cir. 2001); *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989).

There are two theories of supervisory liability under which a plaintiff can sue a municipal defendant in a personal capacity action. *See A.M. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 2578 (3d Cir. 2004). Under the first theory, defendants can be sued as policymakers "if it is shown that defendants, 'with deliberate indifference to the consequences, established and maintained a policy, custom, or practice which directly caused [the] constitutional harm.'" *Id.* (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). The second theory provides for personal liability if the plaintiff can show that a supervisor "participated in violating [his] rights, or that he directed others to violate them, or that he . . . had knowledge of and acquiesced in his subordinates' violations." *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190–91 (3d Cir. 1995) (citing *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990)). There is no liability for personal capacity actions based only on a theory of respondeat superior.

*Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Monell*, 436 U.S. at 693.

Here, Loscombe has alleged facts that, taken as true, show that Mayor Doherty personally participated in violating Loscombe's rights, directed others to violate those rights, or knew of and acquiesced in the violations of his subordinates. Specifically, he alleges that Mayor Doherty "as the highest official of the City was intimately involved with the stripping of [Loscombe's pension] benefits since he approved the same" and directed the Pension Board Defendants to suspend those pension benefits (*Id.* at ¶¶ 9, 21, 24). Accordingly, Loscombe's claims against Mayor Doherty in his individual capacity will not be dismissed for failure to allege personal involvement.

The Supreme Court has held that official capacity suits cannot be maintained against state officers acting in their official capacity on behalf of the state. *See Hafer*, 502 U.S. at 27 (state officers sued for damages in their individual capacity are not "persons" for purposes of the suit because they assume the identity of the government that employs them). "[C]ourts sitting in the Third Circuit have dismissed defendants sued in their official capacity when the same claims are made against the municipality." *Dubas v. Olyphant Police Dep't*, No. 3:11-CV-1402, 2012 WL 1378694, at *4 (M.D. Pa. Apr. 20, 2012) (citing *Whaumbush v. City of Phila.*, 747 F. Supp. 2d 505, 510 n.2 (E.D. Pa. 2010) (dismissing claims against defendants in their official capacity as duplicative of the civil rights claim against the municipality); *Strickland v. Mahoning Twp.*, 649 F. Supp. 2d 422, 428 (M.D. Pa. 2009) (stating that an official capacity suit is "generally merely another way of pleading an action against an entity of which an officer is an

agent.")).  As such, Loscombe's claims against Mayor Doherty in his official capacity[6] will be dismissed as duplicative of the claims against the City.

## 2. Qualified Immunity

A defendant may raise the issue of qualified immunity on a motion to dismiss where the defense is "based on facts appearing on the face of the complaint."  *Mims v. City of Phila.*, No. 09-CV-4288, 2010 WL 2077140, at *13 n.14 (E.D. Pa. May 19, 2010) (internal citations omitted).  It is well-settled that "[t]he doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Schneyder v. Smith*, 653 F.3d 313, 318 (3d Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223 (2009)).  The United States Supreme Court has established a two-part analysis that governs whether an official is entitled to qualified immunity: "(1) whether the facts alleged by the plaintiff show the violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the alleged misconduct."  *Kelly v. Borough of Carlisle,* 622 F.3d 248, 253 (3d Cir. 2010) (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)).  Courts may address these two prongs in any order, at their discretion.  *Pearson,* 555 U.S. at 236.

A legal right is clearly established if "its contours [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).  "This is not to say that an official action is

---

[6]     As to his official capacity, the Third Amended Complaint avers that Mayor Doherty "is the enforcer of the ordinances of the City" as well as "the highest official of the City" and that Loscombe is "required to sue him to declare a provision of an Ordinance unconstitutional."  (Doc. 97 at ¶¶ 9, 24.)

protected by qualified immunity unless the very action in question has previously been held unlawful, . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Id.* (citations omitted). This prong "of the qualified immunity analysis therefore 'turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Montanez v. Thompson,* 603 F.3d 243, 251 (3d Cir. 2010) (quoting *Pearson,* 555 U.S. at 243).

A clearly established right does not require that "there be binding precedent from this circuit" when "the unlawfulness of the defendant's conduct would have been apparent to a reasonable official based on the current state of the law." *Brown*, 269 F.3d at 211–12 n. 4. Thus, "'the absence of a previous decision from our court on the constitutionality of the conduct at issue is not dispositive' in determining whether the particular constitutional right at issue was clearly established at a particular time . . . ." *Pro v. Donatucci,* 81 F.3d 1283, 1292 (3d Cir. 1996) (quoting *Bieregu v. Reno,* 59 F.3d 1445, 1459 (3d Cir. 1995)). In that regard, the Third Circuit "routinely considers decisions by other Courts of Appeals as part of [the] 'clearly established' analysis when we have not yet addressed the right asserted by the plaintiff." *Williams v. Bitner,* 455 F.3d 186, 192–93 (3d. Cir. 2006) (citing *Kopec v. Tate,* 361 F.3d 772, 777–78 n.6 (3d Cir.2004); *Brown,* 269 F.3d at 211–12 n.4). Although they "cannot establish the law of the circuit," district court decisions from within the Third Circuit may also be relevant, *Bitner*, 455 F.3d at 193, and "do play a role in the qualified immunity analysis." *Doe v. Delite*, 257 F.3d 309, 321 n.10 (3d Cir. 2001) (citing *Donatucci*, 81 F.3d at 1292).

As the Court has dismissed Loscombe's First Amendment retaliation claim (Count I) and his "unlawful seizure and taking" claim (Count IV), the remaining claims in this

case (Count III) concern Loscombe's facial and as-applied challenges to the Ordinance's constitutionality.  To the extent that Loscombe's as-applied challenge implicates Mayor Doherty's alleged personal involvement (*i.e.*, that he allegedly directed the Pension Board Defendants to suspend Loscombe's pension benefits because of the Ordinance), Loscombe has alleged that Mayor Doherty violated his First and Fifth Amendment rights.  However, the facts stated by Loscombe, even when viewed in the light most favorable to him, do not show that Mayor Doherty violated clearly established constitutional rights. Loscombe has not alleged that Mayor Doherty knew or should have known at the time of the alleged misconduct that he was carrying out an unconstitutional law or carrying out a valid law in an unconstitutional fashion.  The claimed unlawfulness of an Ordinance that suspends retired City firemen's pension benefits for the duration of any subsequent compensated employment with the City was not clearly established as of 2010, nor has it been clearly established since.  *See infra* Part II.  Therefore, Mayor Doherty is entitled to qualified immunity and all remaining claims against him in his individual capacity, including those for punitive damages, will be dismissed with prejudice from the case.

## II.  Loscombe's Motion for Partial Summary Judgment (Doc. 105)[7]

### A.  Overbreadth Claim (Count III)

The First Amendment overbreadth doctrine states that:

---

[7]    Loscombe contends that his motion for partial summary judgment must be granted because the City Defendants filed their brief in opposition beyond the twenty-one day period proscribed by Local Rule 7.6 and the Pension Board Defendants have not filed a brief in opposition.  (Doc. 123 at 1–2.)  However, the Court will decline to do so.  *See Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 174 (3d Cir. 1990) (holding that a motion for summary judgment may not be granted simply because it is unopposed); *see also Player v. Motiva Enters.*, No. 02-CV-3216, 2006 WL 166452, at *3 (D.N.J. Jan. 20, 2006) (considering untimely filing because court should not grant a motion for summary judgment without examining the merits).

A regulation of speech may be struck down on its face if its prohibitions are sufficiently overbroad—that is, if it reaches too much expression that is protected by the Constitution. [A] policy can be found unconstitutionally overbroad if "there is a 'likelihood that the statute's very existence will inhibit free expression'" to a substantial extent.

*Sypniewski v. Warren Hills Reg'l Bd. Of Educ.*, 307 F.3d 243, 258 (3d Cir. 2002)).

"[C]ourts will not strike down a regulation as overbroad unless the overbreadth is 'substantial in relation to the [regulation]'s plainly legitimate sweep.'" *Id.* at 259 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)). Courts "vigorously enforce[ ] the requirement that a statute's overbreadth be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep" in an attempt to "strike a balance between competing social costs": "On the one hand, the threat of enforcement of an overbroad law deters people from engaging in constitutionally protected speech . . . . On the other hand, invalidating a law that in some of its applications is perfectly constitutional . . . has obvious harmful effects." *United States v. Williams*, 553 U.S. 285, 292 (2008). "[T]he overbreadth doctrine is not casually employed. Because of the wide-reaching effects of striking down a statute on its face . . . [courts] have recognized that the overbreadth doctrine is strong medicine and have employed it with hesitation, and then only as a last resort." *Los Angeles Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39 (1999) (internal quotation marks omitted).

"The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *Williams*, 553 U.S. at 293. The next step is to determine whether the statute, as construed, penalizes "a substantial amount of protected expressive activity." *Id.* at 297. "Before striking down a policy as overbroad, we must determine whether

there is any reasonable limiting construction . . . that would render [it] constitutional."
*McCauley v. Univ. of the V.I.*, 618 F.3d 232, 242 (3d Cir. 2010) (internal quotations omitted). "Every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *Sypniewski*, 307 F.3d at 259 (internal quotations omitted).

The Ordinance at issue in this matter provides that:

> When any fireman is pensioned and thereafter enters the service of the City in any capacity with compensation the pension of such person shall be suspended during his term of service. Upon termination of such compensated service the pension payments shall be resumed on request of the pensioner.

Scranton, Pa., Code of the City of Scranton ch. 99, art. V, § 99-80 (1997). By the terms of the Ordinance, a pensioned City fireman who obtains any compensated position with the City will have his pension suspended for as long as he remains in the new position. The applicability of the Ordinance is not limited to certain City positions or departments. Having completed the first step of the inquiry, the Court must now determine whether the Ordinance penalizes a substantial amount of protected expressive activity.

Loscombe argues that the Ordinance is overbroad because it infringes on his right to hold public office by suspending his pension benefits if he holds public office with the City. (Doc. 107 at 3.) He further contends that it discourages the City's pensioned police officers and firemen from seeking public office with the City, as they will likely receive less compensation from the City for holding elected office than they would from their City pension. (*Id.*) Although the Ordinance undoubtedly impacts some protected expressive activity (*e.g.*, running for public office), the Court finds that Loscombe has not shown that the Ordinance penalizes "a substantial amount of protected expressive activity" and requires the Court to employ the "strong medicine" of striking it down as

17

unconstitutionally overbroad.  Accordingly, because Loscombe has failed to show that he is entitled to judgment as a matter of law, the Court will not grant summary judgment in his favor with respect to his overbreadth claim.

### B.  Freedom of Association Claim (Count III)

Loscombe's Third Amended Complaint avers that "every retired public safety officer . . . has a constitutional right to hold a political office . . . ."  (Doc. 97 at ¶ 1.)  No party contests that Loscombe and other retired firemen have a right to associate with and as members of the City Council.  Such expressive association "recognize[s] a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion."  *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984).  As such, "[a] social group is not protected unless it engages in expressive activity such as taking a stance on an issue of public, political, social, or cultural importance."  *Schultz v. Wilson*, 304 F. App'x 116, 120 (3d Cir. 2008) (internal citations omitted).

"As in the area of freedom of expression, an individual's right of association may be limited by valid, content-neutral time, place and manner restrictions enacted by the state."  *Tacynec v. City of Phila.*, 687 F.2d 793, 799 (3d Cir. 1982) (citation omitted); *Grace United Methodist Church v. City Of Cheyenne*, 451 F.3d 643, 658 (10th Cir. 2006) (applying same standard for content-neutral speech to association); *Emergency Coal. To Defend Educ. Travel v. U.S. Dept. of Treasury*, 498 F. Supp. 2d 150, 161 (D.D.C. 2007), *aff'd*, 545 F.3d 4 (D.C. Cir. 2008) (same).  "Under the Fourteenth Amendment, city ordinances are within the scope of [the First Amendment's] limitation on governmental authority."  *Members of City Council v. Taxpayers for Vincent*, 466 U.S.

789, 792 n.2 (1984).  The Court has previously determined that the Ordinance is

content-neutral.  (Doc. 95 at 16.)  Therefore, the Ordinance does "not offend the First

Amendment as long as the restrictions (1) are narrowly tailored to serve a significant

governmental interest; and (2) leave open ample alternative channels for communication

of the information."  *Johnson v. City and Cnty. of Phila.*, 665 F.3d 486, 491 (3d Cir.

2011) (internal quotations omitted).  Applied to the right of association, this requires that

the Ordinance does not "burden any more speech or associational rights than

necessary" in furthering the City's substantial interest.  *Grace United*, 451 F.3d at 658.

Both the City Defendants and the Pension Board Defendants represent that the

aim of the Ordinance, which was enacted in 1964, is to prevent retired City firemen who

subsequently become compensated City employees from receiving two simultaneous

income streams from the City.  (Doc. 43 at 4–5; Doc. 104 at 12.)  The Court finds that

preventing retired City firemen from "double dipping" and conserving City pension funds

is a significant governmental interest.  *See Slavsky v. New York City Police Dep't*, 967 F.

Supp. 117, 118–119 (S.D.N.Y. 1997), *aff'd*, 159 F.3d 1348 (2d Cir. 1998).  The Court

also finds that because the Ordinance promotes this interest, which would be achieved

less effectively were it not for the Ordinance, it is narrowly tailored and does not burden

more speech or associational rights than necessary.[8]  *See Ward v. Rock Against

Racism*, 491 U.S. 781, 798–99 (1989); *see also Grace United*, 451 F.3d at 658.  In

---

[8]    In its August 10, 2012 Memorandum and Order, the Court, in addressing a motion to
dismiss, opined that the Ordinance did not appear to be narrowly tailored.  (Doc. 95
at 19–20.)  Specifically, the Court noted that Loscombe's reduced financial standing
as a result of joining City Council exceeded the City's interest in preventing "double
dipping."  (*Id.* at 20.)  However, upon re-examination and considering Loscombe's
motion for summary judgment on this claim, the Court is of the opinion that his
reduced compensation is insufficient to render the Ordinance not narrowly tailored.

addition, Loscombe has not shown that the Ordinance "does not leave open ample channels" for communication. *See Galena v. Leone*, 638 F.3d 186, 203 (3d Cir. 2011) ("The Supreme Court has required that an alternative means of communication provide only a 'reasonable opportunity' for communication . . . .") (citing *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 54 (1986)). Therefore, because Loscombe has failed to show that he is entitled to judgment as a matter of law, the Court will not grant summary judgment in his favor on his First Amendment freedom of association claim.

### C. Equal Protection Claim (Count III)

Loscombe claims that the distinction made by the Ordinance between retired City firemen who subsequently obtain employment with the City and those who do not violates retired City firemen's rights to equal protection of the laws, as guaranteed by the Fourteenth Amendment.

The Equal Protection Clause of the Fourteenth Amendment directs that all similarly situated individuals be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Loscombe's Equal Protection claim does not identify a classification employed by the Ordinance that would trigger heightened scrutiny, nor does it identify a fundamental right upon which this statute infringes. "Unless a statute employs a classification that is inherently invidious or that impinges on fundamental rights, . . . the Court exercises only a limited review power over the representative body through which the public makes democratic choices among alternative solutions to social and economic problems." *Slavsky*, 967 F. Supp. at 119. Economic legislation, such as the Ordinance, "is entitled to a strong presumption of constitutionality, and will be upheld [against an Equal Protection challenge] so long as it bears any rational relation to a

legitimate state objective." *Id.* (citing *Schweiker v. Wilson*, 450 U.S. 221, 238 (1981); *Mathews v. De Castro*, 429 U.S. 181, 184 (1976)). "Where rational basis scrutiny applies, the Government has no obligation to produce evidence, or empirical data to sustain the rationality of a statutory classification, but rather, can base its statutes on rational speculation. Indeed, any reasonably conceivable state of facts will suffice to satisfy rational basis scrutiny and the burden falls to the party attacking the statute as unconstitutional to negate every conceivable basis which might support it." *Sullivan v. City of New York*, No. 08-CV-7294, 2011 WL 1239755, at *4 (S.D.N.Y. Mar. 25, 2011) (internal citations omitted).

Loscombe thus has the burden of showing that the Ordinance has no rational basis, *i.e.*, "that the classifications it draws are wholly irrelevant to the achievement of the City's legitimate objectives." *Slavsky*, 967 F. Supp. at 119 (citing *Schweiker*, 450 U.S. at 234; *Dandridge v. Williams*, 397 U.S. 471, 485 (1970); *Western & S. Life Ins. Co. v. State Bd. Of Equalization*, 451 U.S. 648, 668 (1981); *McGowan v. Maryland*, 366 U.S. 420, 425 (1961)). "Economic legislation 'does not violate the Equal Protection Clause merely because classifications made by its laws are imperfect.'" *Id.* (quoting *Dandridge*, 397 U.S. at 485). The Supreme Court has "consistently refused to invalidate on equal protection grounds legislation which it simply deemed unwise or unartfully drawn." *United States R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 175 (1980). "The deference to the legislature embodied by the rational basis standard is 'true to the principle that the Fourteenth Amendment gives federal courts no power to impose upon the states their views of what constitutes wise economic or social policy.'" *Slavsky*, 967 F. Supp. at 119 (quoting *Dandridge*, 397 U.S. at 486).

21

The City Defendants contend that the Ordinance is meant "to prevent a situation where a retired City employee returns to work for the City and is paid both a City pension payment and a City wage" and "ensure that only 'retired' workers are provided a pension." (Doc. 104 at 12.) In other words, the Ordinance furthers the legitimate public purpose of preventing "double dipping" by suspending the pension benefits of retired City firemen who are also receiving active employment benefits from the City. Loscombe has not provided the Court with a basis to conclude that there is a complete and utter lack of "rational relationship between the disparity of treatment and some legitimate governmental purpose." *See Heller v. Doe*, 509 U.S. 312, 320 (1993). As Loscombe has failed to negate "any reasonably conceivable state of facts that could provide a rational basis for the [challenged] classification," *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001), he has not shown that he is entitled to judgment as a matter of law. Therefore, the Court will not grant summary judgment in his favor with respect to his Equal Protection claim.

### D. Takings Clause Claim (Count III)

The Fifth Amendment Takings Clause "proscribes the taking of private property for public use, without just compensation." U.S. Const. amend. V; *see also Cowell v. Palmer Twp.,* 263 F.3d 286, 290 (3d Cir. 2001). It is well-settled that this prohibition applies to state and local governments under the Fourteenth Amendment. *Chicago, Burlington & Quincy R.R. Co. v. City of Chicago,* 166 U.S. 226, 239 (1897); *Cowell,* 263 F.3d at 290. The Takings Clause "was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States,* 364 U.S. 40, 49 (1960). Where

the government acts to secure a benefit for the public, a taking thus arises. *Id.*

In Count III of his Third Amended Complaint, Loscombe alleges that the Ordinance is unconstitutional on its face and as applied to him because it violates the Takings Clause. (Doc. 97 at ¶¶ 32–33.) The entirety of Loscombe's argument for summary judgment on this claim is that his "disability pension, and the payments of that pension, are his private property. Therefore, Defendants' taking of [his] pension was unlawful." (Doc. 107 at 20.) Loscombe, through this cursory argument, has not shown that there are no material facts in dispute and that he is entitled to judgment as a matter of law on this claim. Accordingly, Loscombe's motion for summary judgment will be denied with respect to his Fifth Amendment Takings Clause claim.

## CONCLUSION

The motions to dismiss filed by the City Defendants (Doc. 99) and the Pension Board Defendants (Doc. 102) will be granted in part and denied in part. Loscombe's First Amendment retaliation claim (Count I) and "unlawful seizure and taking" claim (Count IV) will be dismissed with prejudice, as will all claims against Mayor Doherty in both his personal and official capacities. In addition, Loscombe's Motion for Partial Summary Judgment (Doc. 105) will be denied. Therefore, Loscombe's First Amendment right of association and overbreadth claims, Fifth Amendment takings claims, and Fourteenth Amendment Equal Protection claims against the City Defendants and Pension Board Defendants will remain in the case. An appropriate Order follows.


May 20, 2013                        /s/ A. Richard Caputo
Date                                     A. Richard Caputo
                                              United States District Judge