# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JOHN LOSCOMBE,

    Plaintiffs,

    v.

CITY OF SCRANTON, *et al.*

    Defendants.

CIVIL ACTION NO. 3:10-CV-1182

(JUDGE CAPUTO)

## MEMORANDUM

Presently before the Court are Motions for Summary Judgment on behalf of Defendant City of Scranton (Doc. 130) and Defendants City of Scranton Firemen's Pension Commission, Firemen's Relief and Pension Fund Commission, and City of Scranton Composite Pension Board (collectively, "Pension Board Defendants") (Doc. 135). Because there are no genuine issues of material fact in this case and both Defendants are entitled to judgment as a matter of law on each of the remaining claims, the Court will grant both Defendants' Motions for Summary Judgment.

## FACTUAL BACKGROUND

This case arises out of suspension of the pension benefits of retired fireman John Loscombe ("Plaintiff"). Plaintiff's date of retirement was May 10, 2011, and he began receiving his bi-monthly pension check on August 15, 2011. (Doc. 65, Ex. 4.) At the time he retired, Plaintiff was a Fire Captain. *Id.* Plaintiff's pension was calculated based on 50% of his total salary, amounting to payments of $887.73 every two weeks. *Id.* The classification of the "type of benefit" Plaintiff received was "service disability." *Id.* Plaintiff

was appointed to the City Council of Scranton on January 12, 2010. (Doc. 65, Ex. 5.) At the time of his appointment, Plaintiff was still receiving his bi-monthly pension. *Id.* Plaintiff receives $12,500 annually in compensation from the City of Scranton as a City Councilperson. (Loscombe Tr. 60:10-12, Mar. 6, 2012, Doc. 107, Ex. 5.) On January 27, 2010, the Fireman's Pension Commission voted in favor of suspending Plaintiff's pension because he received compensation in his appointment to City Council . (Doc. 65, Ex. 8.) This was in accordance with § 99-80 of the City Code of Scranton ("the Ordinance"), which in relevant part, provides:

> When any fireman is pensioned and thereafter enters the service of the City in any capacity with compensation the pension of such person shall be suspended during his term of service. Upon termination of such compensated service the pension payments shall be resumed on request of the pensioner.

Scranton, Pa., Code of the City of Scranton ch. 99, art. V, § 99-80 (1997). On February 2, 2010, Brian Scott, Secretary of the Firemen's Pension Commission, wrote a letter to Plaintiff advising him that his pension had been suspended and requesting a refund of the January 28, 2010 pension payment which already been direct deposited. (Doc. 65, Ex. 10.) When Plaintiff's appointed term as City Councilperson expired, he ran for City Councilperson in the May 2011 primary and the November 2011 general election. (Loscombe Tr. 16:12-25, Mar. 6, 2012, Doc. 107, Ex. 5.) Plaintiff was elected for and is currently serving a four-year term as City Councilperson. *Id.* Like Plaintiff, the pension of retired fireman Thomas Davis, who was appointed to Superintendent of Fire of the Scranton Fire Department, remains frozen until he no longer serves in this position. (Doc. 65, Ex. 12.)

**PROCEDURAL HISTORY**

Plaintiff filed his initial Complaint (Doc. 1) on June 3, 2010 against Defendant City of Scranton.   On February 17, 2012 the Court granted Plaintiff's Motion for Leave to File Second Amended Complaint (Doc. 21).  Plaintiff filed his Second Amended Complaint (Doc. 29) on February 17, 2012, adding the City of Scranton Firemen's Pension Commission, Firemen's Relief and Pension Fund Commission, and Composite Pension Board, ("Pension Board Defendants") and Mayor Chris Doherty in his official and individual capacity as Defendants.  On August 10, 2012, the Court issued a Memorandum and Order (Doc. 95) addressing Motions to Dismiss Plaintiff's Second Amended Complaint (Doc. 29) filed by Defendants City of Scranton and Mayor Chris Doherty (Doc. 34) and the Pension Board Defendants (Doc. 39). The Court dismissed all claims against Defendant Doherty as well as Plaintiff's First Amendment retaliation claim (Count I) and unlawful seizure and taking claim (Count IV) without prejudice, but granted Plaintiff leave to amend those claims.  It also dismissed Plaintiff's substantive and procedural due process claims (Count II), First Amendment free speech (Count III), and Fifth Amendment vagueness claims (Count III) with prejudice.  His First Amendment claims for freedom of association and overbreadth, Fifth Amendment takings claim, and Fourteenth Amendment Equal Protection claims were allowed to proceed. *Loscombe v. City of Scranton*, 902 F. Supp. 2d 532, 548 (M.D. Pa. 2012).  Plaintiff filed his Third Amended Complaint in this § 1983 action on August 29, 2012.  (Doc. 97.)  On September 14, 2012, Defendants City of Scranton and Mayor Chris Doherty filed a Motion to Dismiss (Doc. 99), and the Pension Board Defendants did likewise on

3

September 17, 2012 (Doc. 102). Plaintiff moved for partial summary judgment on September 19, 2012. (Doc. 105.) In its May 20, 2013 Memorandum and Order, the Court granted in part and denied in part Defendants City of Scranton and Mayor Chris Doherty's Motion to Dismiss (Doc. 99) and the Pension Board Defendants Motion to Dismiss (Doc. 102). Defendant Doherty was dismissed from the action in his individual and official capacities. Court I, the First Amendment retaliation claim, and Count IV, the unlawful seizure and taking claim of Plaintiff's Third Amended Complaint were dismissed with prejudice. Plaintiff's Motion for Partial Summary Judgment (Doc. 105) was denied. *Loscombe v. City of Scranton*, No. 3:10-CV-1182, 2013 WL 2177768, at *13 (M.D. Pa. May 20, 2013). The City of Scranton and Pension Board Defendants have moved for summary judgment on the remaining claims in the action: Plaintiff's First Amendment freedom of association and overbreadth claims, Fourteenth Amendment Equal Protection claim, and Fifth Amendment takings clause claim. These motions have been fully briefed and are thus ripe for review.

## **LEGAL STANDARD**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Wright v. Corning,* 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police,* 71 F.3d 480, 482 (3d

Cir. 1995)). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. *See Edelman v. Comm'r of Soc. Sec.,* 83 F.3d 68, 70 (3d Cir. 1996). However, where there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *Anderson,* 477 U.S. at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.* Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact and (2) the moving party is entitled to judgment as a matter of law. *See* 2D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the non-moving party has the burden of proof, simply point out to the court that "the non-moving party has failed to make a sufficient showing on an essential element of her case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter,* 476 F.3d 180, 184 (3d Cir. 2007). Once the moving party has satisfied its initial burden, the burden shifts to the non-moving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law. *Anderson,* 477

U.S. at 256–57.  The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement.  *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990).

"To prevail on a motion for summary judgment, the non-moving party must show specific facts such that a reasonable jury could find in that party's favor, thereby establishing a genuine issue of fact for trial."  *Galli v. N.J. Meadowlands Comm'n,* 490 F.3d 265, 270 (3d Cir. 2007) (citing Fed. R. Civ. P. 56(e)).  "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla."  *Id.* (quoting *Hugh v. Butler Cnty. Family YMCA,* 418 F.3d 265, 267 (3d Cir. 2005)).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson,* 477 U.S. at 249.

## **ANALYSIS**

As an initial matter, Defendant City of Scranton argues that "Plaintiff has not identified any unconstitutional action by the City of Scranton in this case" or that the "City of Scranton itself committed any alleged deprivation under color of state law as required to sustain a cause of action under §1983." (Doc. 140, 15.)  Pension Board Defendants make a similar argument that to the extent Plaintiff's claims rest on the constitutionality of the Ordinance, Plaintiff "neglects the very important fact that the Pension Boards had no involvement in the proposal or enactment of this ordinance." (Doc. 143, 7.)  Despite these contentions, assuming that both the City of Scranton and the Pension Board

6

Defendants are properly before the Court in this action, summary judgment will be granted in their favor on each of the claims remaining in this case, analyzed below.

## I.     Freedom of Association Claim (Count III)[1]

Plaintiff's Third Amended Complaint avers that "every retired public safety officer . . . has a constitutional right to hold a political office . . . ." (Doc. 97 at ¶ 1.)  None of the parties contest that Plaintiff and other retired firemen have a right to associate with and serve as members of the City Council.  Expressive association "recognize[s] a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 618 (1984).  As such, "[a] social group is not protected unless it engages in expressive activity such as taking a stance on an issue of public, political, social, or cultural importance." *Schultz v. Wilson*, 304 F. App'x 116, 120 (3d Cir. 2008) (internal citations omitted).

As the Court has previously explained, "[a]s in the area of freedom of expression, an individual's right of association may be limited by valid, content-neutral time, place and manner restrictions enacted by the state." *Tacynec v. City of Phila.*, 687 F.2d 793, 799 (3d Cir. 1982) (citation omitted); *Grace United Methodist Church v. City Of Cheyenne*, 451 F.3d 643, 658 (10th Cir. 2006) (applying same standard for content-

---

[1]     Pension Board Defendants allege that this claim is not applicable to them, as they are "not responsible for the contents or procedural enactment" of the Ordinance and that "they are simply bound to adhere to [it]" once it was made law.  (Doc. 143, 7.)  The Court agrees with this contention but continues to address the merits of Plaintiff's freedom of association claim below, and will grant summary judgment in favor of both Defendants on this issue.

neutral speech to association); *Emergency Coal. To Defend Educ. Travel v. U.S. Dept. of Treasury*, 498 F. Supp. 2d 150, 161 (D.D.C. 2007), *aff'd*, 545 F.3d 4 (D.C. Cir. 2008) (same). "Under the Fourteenth Amendment, city ordinances are within the scope of [the First Amendment's] limitation on governmental authority." *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 792 n.2 (1984).

The Court previously determined that the Ordinance at issue here is content-neutral. *Loscombe v. City of Scranton*, 902 F. Supp. 2d 532, 544 (M.D. Pa. 2012). As such, the Court concluded that the Ordinance does "not offend the First Amendment as long as the restrictions (1) are narrowly tailored to serve a significant governmental interest; and (2) leave open ample alternative channels for communication of the information." *Johnson v. City and Cnty. of Phila.*, 665 F.3d 486, 491 (3d Cir. 2011) (internal quotations omitted). Applied to the right of association, this requires that the Ordinance does not "burden any more speech or associational rights than necessary" in furthering the City's substantial interest. *Grace United*, 451 F.3d at 658. To be narrowly tailored, "a regulation 'need not be the least restrictive or least intrusive means of' furthering the identified interest. 'Rather, the requirement of narrow tailoring is satisfied 'so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Johnson*, 665 F.3d at 492 (internal citations omitted).

As the Court previously noted, both the City of Scranton and the Pension Board Defendants represent that the aim of the Ordinance, which was enacted in 1964, is to prevent retired City firemen who subsequently become compensated City employees from receiving two simultaneous income streams from the City. (Doc. 43, 4–5; Doc.

8

104, 12.)   The Court found that preventing retired City firemen from "double dipping" and conserving City pension funds is a significant governmental interest.  *See Loscombe*, 2013 WL 2177768, at *11.  Although Plaintiff argues that "there is no way summary judgment could be granted [for Defendants] since the Defendant[s have] not shown evidence (and not lawyer argument) that the purpose of Section 99-88 was 'double dipping,'" (Doc. 145, 4; Doc. 148, 4), the Court disagrees.  As the Supreme Court has stated, "[t]he First Amendment does not require a city, before enacting such an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses."  *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 51-52, 106 S. Ct. 925, 89 L. Ed. 2d 29 (1986).  The Court maintains its holding that the Ordinance serves a substantial government interest.

The Court also found that the Ordinance was narrowly tailored to the promotion of this interest and does not burden more speech or associational rights than necessary.  *Id.*  The Supreme Court has explained that "a municipality may rely on any evidence that is 'reasonably believed to be relevant' for demonstrating a connection between speech and a substantial government interest."  *City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 435, 438, 122 S. Ct. 1728, 152 L. Ed. 2d 670 (2002) (internal citations omitted).  Without the Ordinance, retired public safety officers serving the City in a compensated position, such as Plaintiff, would receive two streams of income from the City.  Therefore, the Ordinance is narrowly tailored to the substantial government interest in preventing compensated retired public safety officers from receiving two simultaneous

payments from the City, since without the Ordinance, this objective would be achieved less effectively.

With respect to the second part of the test, whether the Ordinance leaves open ample alternative channels for communication of the information, the Court previously stated that Plaintiff had failed to shown that the Ordinance "does not leave open ample channels" for communication. *Loscombe*, 2013 WL 2177768, at *11. In evaluating whether an ordinance satisfies this test, "a speaker is not entitled to his or her favored or most cost-effective mode of communication. . . . He or she must simply be afforded the opportunity to 'reach the 'intended audience.'" *Johnson*, 665 F.3d at 494. Plaintiff has not presented any evidence to suggest that he has been prevented from engaging in communication that reaches his intended audience, or that alternative channels for communicating with others have been hampered. Therefore, the Ordinance appears to leave open alternative channels for communicating the information. Since the Ordinance satisfies both parts of the test, summary judgment will be granted for Defendants on Plaintiff's First Amendment freedom of association claim.

## II.  Overbreadth Claim (Count III)[2]

As the Court noted earlier, the First Amendment overbreadth doctrine provides that:

> A regulation of speech may be struck down on its face if its prohibitions are sufficiently overbroad—that is, if it reaches too much expression that is protected by the Constitution. [A] policy

---

[2] Pension Board Defendants allege that this claim is not applicable to them. *See* n. 2. As with Plaintiff's freedom of association claim, the Court agrees with this contention but continues to address the merits of Plaintiff's overbreadth claim below and will grant summary judgment in favor of both Defendants on this issue.

10

> can be found unconstitutionally overbroad if "there is a 'likelihood that the statute's very existence will inhibit free expression'" to a substantial extent.

*Sypniewski v. Warren Hills Reg'l Bd. Of Educ.*, 307 F.3d 243, 258 (3d Cir. 2002)). "[C]ourts will not strike down a regulation as overbroad unless the overbreadth is 'substantial in relation to the [regulation]'s plainly legitimate sweep.'" *Id.* at 259 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)). In addition, courts have "vigorously enforced the requirement that a statute's overbreadth be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep" in an attempt to "strike a balance between competing social costs." *United States v. Williams*, 553 U.S. 285, 292 (2008). "On the one hand, the threat of enforcement of an overbroad law deters people from engaging in constitutionally protected speech . . . . On the other hand, invalidating a law that in some of its applications is perfectly constitutional . . . has obvious harmful effects." *Id.* Furthermore, "the overbreadth doctrine is not casually employed. Because of the wide-reaching effects of striking down a statute on its face . . . . [courts] have recognized that the overbreadth doctrine is strong medicine and have employed it with hesitation, and then only as a last resort." *Los Angeles Police Dep't v. United Reporting Publ'g Corp.*, 528 U.S. 32, 39 (1999) (internal quotation marks omitted).

In analyzing whether a given statute or ordinance is overbroad, "[t]he first step . . . is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *Williams*, 553 U.S. at 293. The next step is to determine whether the statute, as construed, penalizes "a substantial amount of protected expressive activity." *Id.* at 297. However, "[b]efore striking down a

policy as overbroad, we must determine whether there is any reasonable limiting construction . . . that would render [it] constitutional." *McCauley v. Univ. of the V.I.*, 618 F.3d 232, 242 (3d Cir. 2010) (internal quotations omitted). "Every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *Sypniewski*, 307 F.3d at 259 (internal quotations omitted).

As the Court has already noted, by the terms of the Ordinance at issue here, a pensioned City fireman who obtains any compensated position with the City will have his pension suspended for as long as he remains in the new position. The applicability of the Ordinance is not limited to certain City positions or departments.

Having completed the first step of the inquiry, the Court determined that Plaintiff had failed to show that the Ordinance penalizes a substantial amount of protected expressive activity. *Loscombe*, 2013 WL 2177768 at *10. Plaintiff argues in opposition to Defendants' Motions for Summary Judgment that the ordinance "has a chilling effect on all disabled firemen and police who have been pensioned" and that if upheld, "all disabled pensioned firemen and police would be discouraged from seeking public office with the City." (Doc. 145, 6; Doc. 148, 7.) However, Plaintiff offers no support for these assertions. Although Plaintiff's particular compensation from the City in his position as councilperson was lower than his pension payments, nothing in the record indicates that this would be the case for a substantial number of retired firemen receiving pensions who subsequently seek to serve in compensated positions with the City. Further, as Plaintiff himself demonstrates, despite the fact that the amount of compensation he received from the City was lower than what he received for his bi-monthly pension payments as of January 2010, he still ran for City Council in the May 2011 primary and

12

the November 2011 general election. Therefore, it does not appear as though he was deterred from engaging in expressive activity, and nothing on the record suggests that the Ordinance inhibits a substantial amount of protected activity. To the contrary, the record indicates that at least one other retired fireman, Thomas Davis, who was subject also subject to the Ordinance, was not discouraged from serving as Superintendent of Fire in the Scranton Fire Department despite having his fireman's pension suspended. Because there is no indication that the Ordinance inhibits a substantial amount of protected activity, summary judgement will be granted for Defendants on this issue.

### III. Equal Protection Claim (Count III)

Plaintiff asserts that the Ordinance violates the Equal Protection clause of the Fourteenth Amendment by causing "disabled pensioned public safety employees to lack the same access to the political system that others have."[3] (Doc. 145, 17; Doc. 148, 18.)

The Equal Protection Clause of the Fourteenth Amendment directs that all similarly situated individuals be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). Plaintiff's Equal Protection claim does not identify a classification employed by the Ordinance that would trigger

---

[3] Plaintiff also states for the first time in his Briefs in Opposition to Defendants' Motions for Summary Judgment that "even under the class of one doctrine, Plaintiff is protected since this is not an employment matter but rather a disabled citizen who was once a firefighter but not currently." (Doc. 145, 17; Doc. 148, 18.) To bring a claim under the "class of one doctrine," Plaintiff must allege that he "has been treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L. Ed. 2d 1060 (2000). Plaintiff has not alleged any of these required elements. Furthermore, no facts on the record would support such contentions, if made. Therefore, Plaintiff's Equal Protection claim will not be analyzed according to the "class of one" doctrine.

heightened scrutiny,[4] nor does it identify a fundamental right upon which this statute infringes.[5] As the Court has previously stated, "[u]nless a statute employs a classification that is inherently invidious or that impinges on fundamental rights, . . . the Court exercises only a limited review power over the representative body through which the public makes democratic choices among alternative solutions to social and economic problems." *Slavsky*, 967 F. Supp. at 119. Economic legislation, such as the Ordinance, "is entitled to a strong presumption of constitutionality, and will be upheld [against an Equal Protection challenge] so long as it bears any rational relation to a legitimate state objective." *Id.* (citing *Schweiker v. Wilson*, 450 U.S. 221, 238 (1981); *Mathews v. De Castro*, 429 U.S. 181, 184 (1976)). "Where rational basis scrutiny applies, the Government has no obligation to produce evidence, or empirical data to sustain the rationality of a statutory classification, but rather, can base its statutes on

---

[4] Plaintiff appears to argue that the Ordinance should be subject to heightened scrutiny since he was receiving a disability pension. However, statutes that discriminate on the basis of disability do not receive heightened scrutiny. *See, e.g. Sullivan v. City of New York*, No. 08-CV-7294, 2011 WL 1239755, at *4 (S.D.N.Y., March 25, 2011) (citing *City of Clerburne*, 473 U.S. at 442, 446) ("Legislative classifications based on race, alienage, nationality, sex, and illegitimacy received heightened scrutiny under the Equal Protection Clause. Classifications based on disability, however, do not.")

[5] Plaintiff argues that the Ordinance should be evaluated under strict scrutiny because it is "imposing a city-imposed qualification that undermines the right of the people to have whomever they wish and their public leader." (Doc. 145, 19; Doc. 148, 20.) In support of this argument, Plaintiff relies on *Mancuso v. Taft*, which applied strict scrutiny to a city Ordinance prohibiting city employees from continuing to work for the city after becoming candidates for nomination or election to any public office. 476 F.2d 187, 189 (1st Cir. 1973). In *Mancuso*, the First Circuit evaluated the Ordinance under strict scrutiny because there was evidence that the pool of candidates "was directly and substantially limited" and the people affected by the rule were "deterred from seeking office in a very effective manner." *Id.* at 193-94. Nothing in the record suggests that either of these two factors in favor of analyzing the Ordinance under strict scrutiny are present in this case.

rational speculation. Indeed, any reasonably conceivable state of facts will suffice to satisfy rational basis scrutiny and the burden falls to the party attacking the statute as unconstitutional to negate every conceivable basis which might support it." *Sullivan v. City of New York*, 2011 WL 1239755, at *4 (internal citations omitted).

Therefore, Plaintiff has the burden of showing that there is no rational basis for the Ordinance such that "the classifications it draws are wholly irrelevant to the achievement of the City's legitimate objectives." *Slavsky*, 967 F. Supp. at 119 (citing *Schweiker*, 450 U.S. at 234; *Dandridge v. Williams*, 397 U.S. 471, 485 (1970); *Western & S. Life Ins. Co. v. State Bd. Of Equalization*, 451 U.S. 648, 668 (1981); *McGowan v. Maryland*, 366 U.S. 420, 425 (1961)). "Economic legislation 'does not violate the Equal Protection Clause merely because classifications made by its laws are imperfect.'" *Id.* (quoting *Dandridge*, 397 U.S. at 485). The Supreme Court has "consistently refused to invalidate on equal protection grounds legislation which it simply deemed unwise or unartfully drawn." *United States R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 175 (1980). "The deference to the legislature embodied by the rational basis standard is 'true to the principle that the Fourteenth Amendment gives federal courts no power to impose upon the states their views of what constitutes wise economic or social policy.'" *Slavsky*, 967 F. Supp. at 119 (quoting *Dandridge*, 397 U.S. at 486).

Defendant City of Scranton contends that the Ordinance is meant "to prevent a situation where a retired City employee returns to work for the City and is paid both a City pension payment and a City wage" and "ensure that only 'retired' workers are provided a pension." (Doc. 104 at 12.) In other words, the Court has concluded that the Ordinance furthers the legitimate public purpose of preventing "double dipping" by

15

"suspending the pension benefits of retired City firemen who are also receiving active employment benefits from the City." *Loscombe*, 2013 WL 2177768, at *12. Plaintiff has not provided the Court with any basis to conclude that there is a complete and utter lack of "rational relationship between the disparity of treatment and some legitimate governmental purpose." *See Heller v. Doe*, 509 U.S. 312, 320 (1993). Because Plaintiff has failed to negate "any reasonably conceivable state of facts that could provide a rational basis for the [challenged] classification," *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001), the Court will grant summary judgment in favor of the Defendants with respect to Plaintiff's Equal Protection claim.

### III. Takings Clause Claim (Count III)

The Fifth Amendment Takings Clause "proscribes the taking of private property for public use, without just compensation." U.S. Const. amend. V; *see also Cowell v. Palmer Twp.,* 263 F.3d 286, 290 (3d Cir. 2001). As the Court has previously noted, it is well-settled that this prohibition applies to state and local governments under the Fourteenth Amendment. *Chicago, Burlington & Quincy R.R. Co. v. City of Chicago,* 166 U.S. 226, 239 (1897); *Cowell,* 263 F.3d at 290. The Takings Clause "was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States,* 364 U.S. 40, 49 (1960). Where the government acts to secure a benefit for the public, a taking thus arises. *Id.*

In Count III of his Third Amended Complaint, Plaintiff alleges that the Ordinance is unconstitutional on its face and as applied to him because it violates the Takings Clause. (Doc. 97 at ¶¶ 32–33.) In opposition to Defendants Motions for Summary

Judgement, Plaintiff argues that his "disability pension and the payments of that pension, are his private property." (Doc. 148, 30.) Without further substantive explanation, Plaintiff asserts that while Defendants "claim that the disability benefits that would otherwise be paid to Plaintiff have not been taken for public use, and that he is receiving 'just compensation,' this contention is clearly belied by the record." (Doc. 145, 32; Doc. 148, 32.) The Court previously found that "Loscombe, through this cursory argument, has not shown that there are no material facts in dispute and that he is entitled to judgment as a matter of law on this claim." *Loscombe,* 2013 WL 2177768, at *13. Summary judgment will be granted for Defendants on this claim because Plaintiff has failed to identify any facts suggesting that Defendants took his property for public use without just compensation.

## **CONCLUSION**

The Motions for Summary Judgment filed by the Defendant City of Scranton (Doc. 130) and the Pension Board Defendants (Doc. 135) will be granted.

An appropriate Order follows.

| | |
|---|---|
| October 30, 2013 <br> Date | /s/ A. Richard Caputo <br> A. Richard Caputo <br> United States District Judge |